IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| OSCAR LOPEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CAUSE NO. 2:07-CV-291 WL |
| ) | |
| JOHN J. WIDUP, Warden, Porter ) | |
| County Jail, *et al.*, ) | |
| ) | |
| Defendants. ) | |

OPINION AND ORDER

Pro se Plaintiff Oscar Lopez, a prisoner confined at the Porter County Jail as a Federal pretrial detainee, submitted a complaint under 42 U.S.C.§ 1983, alleging that conditions at the jail violated his federally protected rights. Pursuant to § 1915A(a), the court must review the merits of a civil complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and dismiss it if the action is frivolous or malicious, does not state a claim on which relief may be granted or seeks monetary relief against a defendant who is immune from such relief. Federal Rule of Civil Procedure 12(b)(6)provides for the dismissal of a complaint that does not state a claim upon which relief can be granted. Courts apply the same standard under § 1915A as when addressing a motion under RULE 12(b)(6). *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006).

> In order to state a cause of action under 42 U.S.C. § 1983, . . . the plaintiff must allege that some person has deprived him of a federal right [and] . . . he must allege that the person who has deprived him of the right acted under color of state law. These elements may be put forth in a short and plain statement of the claim showing that the pleader is entitled to relief. FED. R. CIV. P. 8(a)(2). In reviewing the complaint on a motion to dismiss, no more is required

> from plaintiff's allegations of intent than what would satisfy RULE 8's notice pleading minimum and RULE 9(b)'s requirement that motive and intent be pleaded generally.

*Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) (citations, quotation marks and ellipsis omitted).

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a RULE 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, ___ U.S. ___, ___; 127 S.Ct. 1955, 1964-65 (2007) (quotation marks, ellipsis, citations and footnote omitted).

> While, for most types of cases, the Federal Rules eliminated the cumbersome requirement that a claimant set out in detail the facts upon which he bases his claim, RULE 8(a)(2) still requires a "showing," rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests.

*Id.* at n.3 (quotation marks and citation omitted). Furthermore, "on a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*, 127 S.Ct. at 1965, citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (quotation marks omitted).

Mr. Lopez brings this action under 42 U.S.C. § 1983, which provides a cause of action to redress the violation of federally secured rights by a person acting under color of state law. *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir. 1984). To state a claim under § 1983, a plaintiff must allege violation of rights

2

secured by the Constitution and laws of the United States, and must show that a person acting under color of state law committed the alleged deprivation. *West v. Atkins*, 487 U.S. 42 (1988). The first inquiry in every § 1983 case is whether the plaintiff has been deprived of a right secured by the Constitution or laws of the United States. *Baker v. McCollan*, 443 U.S. 137, 140 (1979).

In his complaint's first rhetorical paragraph, Mr. Lopez states that the jail has cameras in his housing pod, one of which allows custody officers to watch and videotape inmates in the shower. He further alleges that "there are also cameras to record nude inmates in cells and over toilets in restrooms. These are violations of my rights to bodily privacy." (Complaint at p. 3). These allegations, however, state no claim upon which relief can be granted.

> A prison shares none of the attributes of privacy of a home, an automobile, an office, or a hotel room. We strike the balance in favor of institutional security, which we have noted is central to all other corrections goals. A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order. We are satisfied that society would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security. We believe that it is accepted by our society that loss of freedom of choice and privacy are inherent incidents of confinement.

*Hudson v. Palmer*, 468 U.S. 517, 527 (1983) (citations, quotation marks, and brackets omitted).

> Guards take control of where and how prisoners live; they do not retain any right of seclusion or secrecy against their captors, who are entitled to watch and regulate every detail of daily life. After *Wolfish* and *Hudson*, monitoring of naked prisoners is not only permissible . . . but also sometimes mandatory.
>
> * * *

3

> Surveillance of prisoners is essential, as *Wolfish* establishes. Observation of cells, showers, and toilets is less intrusive than the body-cavity inspections Wolfish held permissible. Guards do the surveillance.

*Johnson v. Phelan*, 69 F.3d 144, 146 (7th Cir. 1995).

Mr. Lopez's claims in rhetorical paragraphs two, three, four, and six deal with conditions of confinement at the Porter County Jail. The Eighth Amendment protects convicted prisoners from cruel and unusual punishments. *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979). The rights of pre-trial detainees are derived from the Fourteenth Amendment's Due Process Clause, *Id.* at 535 n. 16. But "[a]n act or practice that violates the eighth amendment also violates the due process rights of pretrial detainees." *Martin v. Tyson*, 845 F.2d at 1457. A violation of the Eighth Amendment's cruel and unusual punishments clause consists of two elements: (1) objectively, whether the injury is sufficiently serious to deprive the prisoner of the minimal civilized measure of life's necessities, and (2) subjectively, whether the prison official's actual state of mind was one of "deliberate indifference" to the deprivation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294 (1991).

In *Martin v. Tyson*, 845 F.2d 1451, 1457 (7th Cir. 1988), a pretrial detainee protested jail conditions. The court observed that "the conditions at the Marshall County Jail may be far from ideal. But again, the Marshall County Jail is a small, rural jail, and jails do not have to duplicate the amenities of small, rural hotels. In order to make out a claim under 42 U.S.C. § 1983, Martin must show that intentional actions of the defendants served to deprive him of a constitutional right. He has not been Constitutionally harmed here." *Martin v. Tyson*, 845 F.2d

4

at 1457 (citations omitted).

In paragraph two, Mr. Lopez alleges that prisoners are issued one uniform to wear for a week, and that the jail does not provide indigent inmates with underwear. If jail officials did not provide underwear to an indigent prisoner who did not have his own, and the prisoner suffered actual harm, then it might state a claim upon which relief could be granted. But Mr. Lopez does not allege that he suffered any actual harm from this policy; indeed, he does not even allege that he was an indigent inmate. Moreover, Mr. Lopez's *in forma pauperis* petition in this case establishes that was financially able to purchase underwear, as he received $375.00 from outside sources during the six months before he filed this action. It may be that some inmates at the jail could not afford underwear, but Mr. Lopez may not assert the rights of any other inmate because he lacks standing to do so. *See Elk Grove Unified School District v Newdow*, 542 U.S. 1, 12 (2004).

In paragraph three, Mr. Lopez alleges that staph disease is widespread in the jail, and that "due to the lack of cleaning and unsanitary conditions we are placed at risk of contracting the disease from infected inmates . . .." (Complaint at p. 3). In paragraph four, he asserts that the showers and restrooms on the pod are never cleaned or inspected and that showers can be a place for contracting staph disease.

The Constitution doesn't mandate comfortable prisons or jails, and "only those deprivations denying "'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. at 298, quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). A plaintiff asserting an Eighth Amendment claim must show that objectively, the alleged deprivation was sufficiently serious to rise to the level of a constitutional

violation, and subjectively, that the defendant acted with deliberate indifference. *Farmer v. Brennan*, 511 U.S. at 834. Mr. Lopez alleges no actual harm from the conditions he complains of, and the conditions by themselves did not deprive him of the minimal civilized measure of life's necessities.

In rhetorical paragraph six, Mr. Lopez alleges that when he first arrived at the jail he was required to sleep on the floor for thirty-five days before he was assigned to a bed. "Fed. R. Civ. P. 8 establishes a system of notice pleading," and a complaint may not be dismissed at the pleadings stage "unless no relief could be granted 'under any set of facts that could be proved consistent with the allegations.'" *Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir. 1998), quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

Sleeping on the floor does not deprive a prisoner of the minimal civilized measure of life's necessities so long as jail officials provide a mat or mattress. *See Castillo v. Bowles*, 687 F.Supp. 277, 281 (N.D. Tex. 1988). The complaint does not state whether or not Mr. Lopez had a mattress or sleeping mat when jail officials required him to sleep on the floor. Accordingly, giving Mr. Lopez the benefit of the inferences to which he is entitled at the pleadings stage, the court cannot say that he can prove no set of set of facts consistent with his claim that he was required to sleep on the floor.

In rhetorical paragraph five, Mr. Lopez alleges that the jail has a very limited law library, that there are no federal law books in the library, and that Warden Widup will not allow federal pretrial detainees to have access to the law library "unless they are pro se in a criminal case." (Complaint at p. 4). A pre-trial detainee who is without counsel needs the tools necessary to prepare his defense, but jail officials are not required to provide legal materials to an inmate who "was

represented by counsel on his criminal charges." *Martin v. Tyson*, 845 F.2d at 1457. Mr. Lopez does not allege that he is not represented in his criminal case by an attorney, and the docket in his pending criminal case, *United States of America v. Oscar Lopez*, 2:06cv3 PS, establishes that he is represented by counsel in the criminal proceedings against him. Accordingly, the allegation that the Porter County Jail did not afford him access to materials that would assist a federal prisoner in preparing a defense against his criminal charges states no claim upon which relief can be granted.

To the extent Mr. Lopez seeks to assert that denial of access to the law library denied him access to the courts in civil cases, there is no "abstract, freestanding right to a law library . . . [and] . . . an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). To establish a violation of the right to access to the courts, an inmate must establish that jail officials failed to provide the assistance required by *Bounds v. Smith,* 430 U.S. 817 (1977), and show that he suffered actual injury. *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (holding that *Bounds v. Smith* did not eliminate the actual-injury requirement as a constitutional prerequisite to a prisoner asserting lack of access to the courts). The actual-injury requirement applies even in cases "involving substantial systematic deprivation of access to court," including the "total denial of access to a library," or "an *absolute* deprivation of access to all legal materials" *Lewis v. Casey*, 518 U.S. at 2181 n. 4 (emphasis in original). Standing alone, delay and inconvenience do not rise to the

level of a constitutional deficiency. *Campbell v. Miller*, 787 F.2d 217, 229 (7th Cir. 1986), *cert. denied*, 479 U.S. 1019 (1986).

If Porter County Jail officials routinely deny prisoners access to legal materials, they will probably eventually violate a prisoner's right of access to the courts. But the facts presented in the complaint do not support an inference that jail policy violated Mr. Lopez's federally protected rights because he does not allege that he has suffered any actual harm. Delay and inconvenience do not rise to the level of a constitutional deficiency, and the alleged jail policy did not prevent Mr. Lopez from being able to file the complaint in this case.

In addition to Jail Warden Widup, Mr. Lopez also names the United States Marshal as a defendant. He asserts that "I am in Federal custody and as a Federal inmate, the U.S. Marshal is completely responsible for the conditions described above . . . [he was aware] . . . of these conditions and did nothing to change or improve them." (Complaint at p. 4). Because the United States Marshal does not act under color of state law, Mr. Lopez may not bring a § 1983 claim against him. But he may bring claims that persons acting under color of federal law violated his Constitutional rights in a *Bivins* action. *See Bivins v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

In a *Bivins* action, as in § 1983 action, damage claims are based on personal liability. *Ghandi v. Police Department of the City of Detroit*, 747 F.2d 338 (6th Cir. 1984). The United States Marshal was not responsible for operating the Porter County Jail. Mr. Lopez relies on the doctrine of *respondent superior* to hold the Marshal responsible for actions by jail officials because the jail is holding him for the United States. But the doctrine of *respondent superior*, under which a person

8

may be held liable for his subordinates' actions, has no application to *Bivins* actions. *Ghandi v. Police Department of the City of Detroit,* 747 F.2d at 344.

For the foregoing reasons, the court:

(1) GRANTS the plaintiff leave to proceed against defendant John Widup on his Fourteenth Amendment claim that he was required to sleep on the floor for thirty-five days;

(2) Pursuant to 28 U.S.C. § 1915A(b)(1); DISMISSES defendant United States Marshals Service and all other claims;

(3) Pursuant to 42 U.S.C. § 1997e(g)(2), ORDERS that defendant Widup respond to the complaint as provided for in the Federal Rules of Civil Procedure; and

(4) ORDERS the marshals service to effect service of process on defendant Widup, and ORDERS the clerk's office to ensure that a copy of this order is served on him along with the summons and complaint.

SO ORDERED.

DATED: October  15 , 2007

> s/William C. Lee
> William C. Lee, Judge
> United States District Court